UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

———————————————————————— x

CITY OF WARREN POLICE AND FIRE          :     Civil Action No.
RETIREMENT SYSTEM, Individually and on  :
Behalf of All Others Similarly Situated, :     CLASS ACTION COMPLAINT
                                        :
                Plaintiff,              :
                                        :
        vs.                             :
                                        :
HASBRO, INC., BRIAN D. GOLDNER and      :
DEBORAH M. THOMAS,                      :
                                        :
                Defendants.             :

———————————————————————— x

Plaintiff City of Warren Police and Fire Retirement System ("Plaintiff") alleges the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Hasbro, Inc. ("Hasbro" or "the Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all purchasers of Hasbro common stock between April 24, 2017 and October 23, 2017, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "1934 Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. §1391(b). Hasbro maintains its headquarters in this District and many of the acts and conduct that constitute the violations of the law complained of herein occurred in this District.

5. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff purchased the common stock of Hasbro during the Class Period as set forth in the accompanying certification, incorporated by reference herein, and has been damaged thereby.

7.      Defendant Hasbro is a global play and entertainment company.  Hasbro's shares trade under the ticker "HAS" on the NASDAQ, an efficient market.  Hasbro is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island.

8.      Defendant Brian D. Goldner ("Goldner") is, and at all relevant times was, during the Class Period, Chief Executive Officer ("CEO") and Chairman of the Board of Hasbro.

9.      Defendant Deborah M. Thomas ("Thomas") is, and at all relevant times was, during the Class Period, Chief Financial Officer ("CFO") of Hasbro.

10.     Defendants Goldner and Thomas are collectively referred to herein as the "Individual Defendants."

11.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Hasbro's quarterly reports, shareholder letters, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

- 2 -

12.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Hasbro.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Hasbro stock was a success, as it: (i) deceived the investing public regarding Hasbro's prospects and business; (ii) artificially inflated the price of Hasbro common stock; (iii) enabled Defendant Goldner and other Hasbro insiders to collectively sell more than $147 million of their personally-held Hasbro stock to the unsuspecting public; and (iv) caused Plaintiff and other members of the Class to purchase Hasbro common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

13.     Defendant Hasbro is a global play and entertainment company that promotes its brands through immersive storytelling across mediums, including television, film, digital and more.  Hasbro's brands include Franchise brands, which are Hasbro's most significantly owned or controlled properties, such as MY LITTLE PONY and NERF; Partner brands, which include license brands for which Hasbro develops toy and game products, such as STAR WARS and DISNEY PRINCESS; Gaming brands, which include traditional game play such as SCRABBLE and CONNECT 4; and Emerging brands which are also owner controlled but have not achieved franchise brand status, such as FURREAL FRIENDS and BABY ALIVE.  Hasbro also has its wholly-owned Hasbro studios, and its film label, Allspark Pictures which create brand-driven storytelling across multiple mediums, as well as Backflip Studios, LLC, a mobile game developer.

14.     Hasbro's biggest customers are Wal-Mart Stores, Inc., Toys "R" Us, Inc. and Target Corporation, which accounted for approximately 18%, 9%, and 9% respectively, of its consolidated net revenues in fiscal year 2016.  The Company depends upon a relatively small retail customer base to sell the majority of its products.  Hasbro's five (5) largest customers,

including Wal-Mart, Toys "R" Us and Target accounted for approximately 41% of the company's consolidated net revenues in fiscal year 2016.  In the U.S. and Canada, approximately 62% of the net revenues were derived from its top three customers.

15.     By the start of the Class Period, Defendants knew or recklessly disregarded that Toys "R" Us – one of the Company's most important customers—was in far worse financial condition than was being publicly reported.  Defendants knew or recklessly disregarded that Toys "R" Us would have to dramatically scale back its operations or file for bankruptcy and liquidate.  Adding to and exacerbating this uncertainty, Hasbro was experiencing significant undisclosed adverse sales issues in two key markets – the United Kingdom and Brazil.  These issues were negatively impacting the Company's efforts to grow sales in those markets.  Before the full extent of the problems at Toys "R" Us and the sales issues in the United Kingdom and Brazil became known to the market, Defendant Goldner and other Hasbro insiders collectively sold $147 million of their personally held Hasbro stock to the unsuspecting public.

16.     The Class Period starts on April 24, 2017.  On that day, Hasbro issued a press release announcing its financial results for the first quarter of 2017 for the period ended April 2, 2017.  For the first quarter of 2017, Hasbro reported net revenues of $849.7 million and net earnings of $68.6 million or $0.54 per share.  Defendant Goldner commented on the results stating in pertinent part as follows:

> Our first quarter results are in line with our previously communicated expectations and we are well positioned to execute against 2017's rich content slate and diverse new initiatives. . . Revenue grew in the quarter and we drove strong consumer takeaway at retail, both compared to a robust first quarter last year and with a shift of Easter into this year's second quarter. Over the coming quarters, we are supporting significant new initiatives including major theatrical films for both Franchise and Partner Brands.

Defendant Thomas also commented on the results stating in pertinent part as follows:

Hasbro remains in a strong financial position, with positive trends to start the year and a healthy balance sheet. . . . As anticipated, operating profit in the quarter was negatively impacted by an extra week of expenses without the comparable revenue increase. This decline was more than offset by a favorable foreign exchange impact in non-operating income and the tax benefit from the new accounting standard. Based on our first quarter's performance, our full-year expectations remain in line with our previously stated objectives.

17.     On the same day, Hasbro held a conference call with analysts and investors to discuss the Company's earnings and operations (the "April 24th Conference Call"). In his opening remarks, Defendant Goldner represented that the company was well-positioned to deliver profitable growth this year and in future years stating, in pertinent part, as follows:

In closing, the first quarter was consistent with our expectations as we grew compared to a very strong first quarter last year. We are well positioned to execute against the storytelling and brand initiatives for the year while investing to expand the reach of our brands and deliver profitable growth for this year and future years.

18.     During the question/answer session of the April 24th Conference Call, Defendant Goldner was specifically asked about the Company's customer relationship with Toys "R" Us and Toys "R" Us's recent statements about a tough retail environment and inventories for toys. In response, Defendant Goldner spoke positively about their partnership. The following exchange took place:

**Arpine Kocharyan-UBS Investment Bank**

One of your large customers, I guess, in the prior week talked about a tough retail environment, whether in terms of inventories as well as sell-through trade spend. Could you just take a few minutes to kind of give investors an update on the overall health of the category as you stand here at the beginning of the year in terms of toys?

**Goldner**

Sure. You saw that our overall sales grew despite the fact that we had the flip in Easter, and as I've noted, our overall POS grew, both without and including Easter, and grew very robustly. **Our allowances overall are in line with prior periods. So as we said in the fourth quarter back in February, it's very consistent with the first quarter where allowances really are very much the same as they have been in the past. We have a lot of products that are selling quite well.** As Deb

noted, we did take advantage of some of the marketing windows and entertainment windows in EST and our own windows around MY LITTLE PONY launching its new TV series mid-April to clean up some inventories, and that goes out through closeouts. **But for the full year, we do not expect closeouts to differ materially from any prior year.** Just, again, taking advantage of what we're seeing in the marketplace, which is this great, much more robust uptake around the home entertainment windows for major entertainment and also the continued drive that television has on businesses. **So I'd say, overall, we're partnering with that retailer and all our retailers, both in-store and omnichannel online. And we are seeing a great convergence of content, commerce and innovation happening at retail and also particularly in the online space.** (Emphasis added).

19.     The statements referenced above in ¶¶16-18 were materially false and misleading as they failed to disclose and misrepresented the following adverse facts which were known to Defendants or recklessly disregarded by them as follows:

(a)     that Hasbro's relationship with Toys "R" Us was becoming increasingly important to Hasbro's business as Toys "R" Us was the primary retail brick-and-mortar toy store in the United States;

(b)     that Toys "R" Us's financial condition was far worse than was being publicly reported and Toys "R" Us woud likely have to significatily scale back its operations or liquidate in a bankruptcy proceeding.  As a result, Hasbro would have to increase its financial support of Toys "R" Us or risk losing one of its most important customers;

(c)     that Hasbro was experiencing sales issues in the United Kingdom and Brazilian markets which were adversely impacting its sales revenues for those markets; and

(d)     as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about Hasbro, its revenues, earnings and prospects.

20.     On July 24, 2017, Hasbro issued a press release announcing its financial results for the second quarter 2017 for the period ended July 2, 2017.  For the second quarter, Hasbro reported that net revenues of $972.5 million and net earnings of $67.7 million or $0.53 per share. Defendant Goldner commented on the results stating, in pertinent part, as follows:

The Hasbro team executed another very strong quarter across the Brand Blueprint. . . . *We entered the important second half of the year* with strong consumer momentum, a robust and diverse entertainment slate and compelling new brand initiatives. (Emphasis added).

In the press release, Defendant Thomas commented acknowledging that they were "*seeing some softness in economic conditions in Brazil and the U.K,*" but held fast that they were "*well positioned*" as they entered the second half of the year. (Emphasis added).

21. That same day, Hasbro held a conference call with analysts and investors to discuss the Company's earnings and operations (the "July 24th Conference Call"). During his prepared remarks Defendant Goldner acknowledged that problems in the U.K. and Brazil were having an impact on the international segment. He stated in pertinent part as follows:

> . . . . the U.K. and Brazil are facing challenging macroeconomic issues impacting both consumers and retailers. This is having a near-term impact on our revenue and operating profit in the international segment, but our full year outlook for this segment is positive.

Later in July 24th Conference Call, Defendant Goldner falsely characterized the issues in the United Kingdom market as not a "long term issue." The following exchange took place:

**Steph Wissink** – Jefferies LLC – Analyst

Just a couple of follow-up questions. And thanks, Deb and Brian, for the detail. I'm curious about Brazil and the UK. If you can just help us diagnose a bit more about what's happening in those markets. And if it seems a bit more transitory, how you are expecting those markets to develop in the back half?

And then I think secondly – and this is, admittedly, I think, an error on our part – but just understanding the entertainment and licensing-related revenue timing. And Deb, you mentioned there is a deferral by a quarter or so when the revenue is received at retail; then you are collecting a royalty.

But just remind us how we should think about the timing lags on when your major franchise brands' events are, and then the consumer products inbound licensing and the timing on that. Thank you.

**Brian Goldner** – Hasbro, Inc. – Chairman and CEO

Yes. Good morning, Steph. The UK business definitely has had some macroeconomic issues. You see it in the NPD data, and our business has been relatively flat in the quarter from a POS standpoint. But, overall, if you look across Europe, we had double-digit POS growth for both the quarter and year to date. So we really view the UK as being a bit Brexit-focused. We have a little bit of a retail concern out there. But, again, I think it's something the teams have worked through quite well, and I don't see it as a long-term issue.

In Brazil, similarly, you have a macroeconomic situation, a little bit of political instability, and consumer confidence that has changed a bit. But, still, if you look at the emerging market, growth for the quarter was about 7%; year-to-date emerging market growth is 12%. And so we are seeing some good growth across emerging markets.

So I would say both of those are issues the teams are working through. And I would expect that, over time, we'll work through that. Again, same thing there, where Latin America – the rest of Latin America has performed quite well, and we would expect that market – the region overall to perform quite strongly.

22.     In response to Hasbro's earnings release and conference call, the price of Hasbro stock declined from $113.13 per share to $102.44 per share on heavy trading volume. Defendants, however, concealed the full extent of the problems then facing Hasbro's business – Toys "R" Us was on the precipice of filing for bankruptcy protection and two key markets were beset by significant sales issues.

23.     The statements referenced above in ¶¶20-21 were materially false and misleading as they failed to disclose and misrepresented the following adverse facts which were known to Defendants or recklessly disregarded by them as follows:

(a)     that the negative sales issues in the U.K. and Brazil were not short-term but rather were severe and significant and would continue to drag on the Company's financial performance for an extended period; and

(b)     that Toys "R" Us was on the precipice of filing for bankrutcpy protection.

24.     On September 5, 2017, Hasbro filed a Form S-3 shelf registration statement with the SEC which registered for future sale of debt securities.

- 8 -

25.     Then on September 8, 2017 and September 11, 2017, Hasbro filed Form 424B5, Prospectus Supplements and sold $500 million of 3.5% senior notes due 2027.

26.     On September 19, 2017, Toys "R" Us filed for bankruptcy protection.

27.     On October 23, 2017, Hasbro issued a press release announcing its third quarter 2017 ("3Q17") financial results for the period ended October 1, 2017.  Hasbro reported that the U.S. and Canada were negatively impacted by the Toys "R" Us bankruptcy.  This contributed to a 5% *decline* in the U.S. and Canada segment quarterly operating profit to $217.3 million, or 21.9% of net revenues, compared to $228 million, or 24.4% of net revenues in 2016.  Defendant Goldner stated that, "*As a result of the Toys "R" Us bankruptcy filing in the U.S. and Canada, there was a negative impact on our quarterly revenues and operating profit.*"  (Emphasis added).  Further, Defendant Thomas warned that sales would be up only 4% to 7% from a year ago in the fourth quarter because of the Toys "R" Us turmoil and weakness in some markets stating in pertinent part:

> Given our new view to the holiday based on Toys "R" Us and the economic outlook in certain markets, our updated expectation is fourth quarter revenues will increase in a range of 4% to 7% versus the fourth quarter of 2016.

28.     That same day, Hasbro held a conference call with analysts and investors to discuss their earnings and operations (the "October 23rd Conference Call).  During the October 23rd Conference Call, Defendant Goldner acknlowledged that the problems in the U.K and Brazil that he previously didn't see as a "long-term" issue and asserted during the July 24th Conference Call that it "doesn't really portend anything on the full year," are continuing. Defendant Goldner stated in pertinent part:

> As we discussed last quarter, the U.K. and Brazil continued to face tough economic conditions and we forecast that to continue in the near term.

29.     During the October 23rd Conference Call, Defendant Thomas also acknowledged

the continued problems in the U.K. and Brazil stating that, "[T]he challenges we saw emerging

in the second quarter have continued in the U.K. and Brazil, and we anticipate this ***will continue***

***for the remainer of the year.***" (Emphasis added).  Defendant Goldner also admitted to the

problems caused by the Toys "R" Us financial trouble stating that the "near-term impact of Toys

"R" Us is disruptive, and we paused shipments for a short period as we gain clarity on the

situation," and "[O]ur growth plans for the holiday had been impacted by recent events at Toys

"R" Us as well as the economic outlook in certain countries."   Defendant Thomas also

acknowledged the problems relating to Toys "R" Us stating that:

> *[T]he Toys "R" Us bankruptcy filing in the U.S. and Canada negatively impacted*
> *our third quarter revenue and operating profit*, including incremental bad debt
> expense associated with the bankruptcy.  Excluding the incremental expense, total
> company operating profit would have been approximately 100 basis points higher
> in the quarter.  While this event has also negatively impacted our initial growth
> outlook for the fourth quarter, we continue to work closely with Toys "R" Us to be
> able to deliver the right products to consumers for a successful holiday season.
> (Emphasis added).

30.     In response to the above revelations, the price of Hasbro common stock declined

from $92.69  per share to $89.75 per share, on unusually high trading volume of over 7 million

shares trading, seven times the average daily trading volume over the preceding ten trading days,

and a precipitous drop from the class period high of $115.95, which was the price of the stock at

the close on July 21, 2017.

31.     The market for Hasbro common stock was open, well-developed and efficient at

all relevant times.  As a result of these materially false and misleading statements and failures to

disclose, Hasbro common stock traded at artificially inflated prices during the Class Period.

Plaintiff and other members of the Class purchased or otherwise acquired Hasbro common stock

relying upon the integrity of the market price of Hasbro common stock and market information relating to Hasbro and have been damaged thereby.

32.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Hasbro common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

33.    At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Hasbro's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Hasbro and its business, prospects and operations, thus causing the price of Hasbro common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing Hasbro common stock at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market the inflation in the price of Hasbro stock was removed and the price of Hasbro stock declined dramatically causing loss to Plaintiff and the other members of the Class.

## ADDITIONAL SCIENTER ALLEGATIONS

34.     As alleged herein, Hasbro and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading, knew that such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, these Defendants, by virtue of their receipt of information reflecting the true facts regarding Hasbro, their control over, and/or receipt and/or modification of Hasbro's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Hasbro, participated in the fraudulent scheme alleged herein.

35.     Defendants were further motivated to misrepresent the Company's business metrics and financial prospects in order to profit from selling Hasbro common stock.  Indeed, during the Class Period, Hasbro senior executives and directors including Defendant Goldner, collectively sold 1,444,864 of their personally-held Hasbro shares, reaping *more than $147 million* in gross proceeds, as follows:

| Seller | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| Brian Goldner (CEO) | 07/28/2017 | 110,000 | $105.57 | $11,612,700 |
| | 07/31/2017 | 95,656 | $105.83 | $10,123,274 |
| | | 205,656 | | $21,735,974 |
| John Anthony Frascotti (President) | 08/22/2017 | 25,658 | $94.81 | $2,432,635 |
| | 08/31/2017 | 15,000 | $96.00 | $1,440,000 |
| | 08/31/2017 | 8,000 | $98.00 | $784,000 |
| | | 48,658 | | $4,656,635 |
| Alan Geoffrey Hassenfeld (Director and Beneficial Owner) | 07/28/2017 | 94,090 | $105.64 | $9,939,668 |
| | 07/28/2017 | 46,363 | $105.64 | $4,897,787 |
| | 07/31/2017 | 94,090 | $105.72 | $9,947,195 |
| | 07/31/2017 | 46,363 | $105.72 | $4,901,496 |

| | | | |
|---|---|---|---|
| | 08/01/2017 | 61,817 | $106.08 | $6,557,547 |
| | 08/01/2017 | 125,454 | $106.08 | $13,308,160 |
| | 08/02/2017 | 9,764 | $106.03 | $1,035,277 |
| | 08/02/2017 | 19,816 | $106.03 | $2,101,090 |
| | 08/03/2017 | 2,040 | $105.55 | $215,322 |
| | 08/03/2017 | 4,140 | $105.55 | $436,977 |
| | 08/09/2017 | 46,456 | $100.32 | $4,660,466 |
| | 08/09/2017 | 94,277 | $100.32 | $9,457,869 |
| | 08/10/2017 | 3,637 | $99.56 | $362,100 |
| | 08/10/2017 | 1,791 | $99.56 | $178,312 |
| | 08/16/2017 | 91 | $99.52 | $9,056 |
| | 08/16/2017 | 185 | $99.52 | $18,411 |
| | 08/25/2017 | 4,329 | $95.72 | $414,372 |
| | 08/25/2017 | 2,133 | $95.72 | $204,171 |
| | 08/28/2017 | 3,753 | $95.06 | $356,760 |
| | 08/28/2017 | 7,619 | $95.06 | $724,262 |
| | 08/29/2017 | 81,545 | $94.87 | $7,736,174 |
| | 08/29/2017 | 40,181 | $94.87 | $3,811,971 |
| | 08/30/30 | 45,895 | $95.18 | $4,368,286 |
| | 08/30/2017 | 467 | $95.57 | $44,631 |
| | 08/30/2017 | 467 | $95.57 | $44,631 |
| | 08/30/2017 | 93,622 | $95.18 | $8,910,942 |
| | 08/31/2017 | 929 | $98.03 | $91,070 |
| | 08/31/2017 | 22,243 | $97.47 | $2,168,025 |
| | 08/31/2017 | 22,243 | $98.03 | $2,180,481 |
| | 08/31/2017 | 2,617 | $96.63 | $252,881 |
| | 08/31/2017 | 29,340 | $97.47 | $2,859,770 |
| | 08/31/2017 | 22,243 | $96.63 | $2,149,341 |
| | | 1,030,000 | | $104,344,503 |
| | | | | |
| James Duncan | 07/31/2017 | 8,780 | $106.00 | $930,680 |
| Billing | 08/01/2017 | 21,174 | $106.47 | $2,254,396 |
| (Officer) | 08/01/2017 | 9,866 | $106.08 | $1,046,585 |
| | | 39,820 | | $4,231,661 |
| | | | | |
| Thomas J | 07/26/2017 | 2,900 | $106.53 | $308,937 |
| Courtney | 07/27/2017 | 20,301 | $106.50 | $2,162,057 |
| (Officer) | | 23,201 | | $2,470,994 |
| | | | | |
| Stephen J | 07/26/2017 | 20,000 | $105.76 | $2,115,200 |
| Davis | 08/28/2017 | 937 | $94.96 | $88,978 |
| (Officer) | 08/31/2017 | 1,500 | $97.57 | $146,355 |
| | | 22,437 | | $2,350,533 |

| | | | | |
|---|---|---|---|---|
| Barbara Jean Finigan Fitzgerald (Officer) | 07/26/2017 | 23,483 | $106.30 | $2,496,243 |
| Rudolph Johnson (Officer) | 08/02/2017 | 1,600 | $106.50 | $170,400 |
| Tinga Wiebe (Officer) | 08/02/2017 | 10,000 | $104.52 | $1,045,200 |
| | 08/02/2017 | 15,000 | $103.67 | $1,555,050 |
| | 08/29/2017 | 10,000 | $94.78 | $947,800 |
| | 08/29/2017 | 15,009 | $95.01 | $1,426,005 |
| | | 50,009 | | $4,974,055 |

## LOSS CAUSATION/ECONOMIC LOSS

36.     During the Class Period, as detailed herein, Defendants made false and misleading statements by misrepresenting the Company's business and prospects and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Hasbro common stock and operated as a fraud on Class Period purchasers of Hasbro common stock.     Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Hasbro common stock fell precipitously, as the prior artificial inflation came out.   As a result of their purchases of Hasbro common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

37.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.   To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results

to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Hasbro who knew that those statements were false when made.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET

38.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)     Hasbro stock traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Hasbro stock; and

(e)     Plaintiff and other members of the Class purchased Hasbro common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

39.     At all relevant times, the market for Hasbro common stock was efficient for the following reasons, among others:

(a)     As a regulated issuer, Hasbro filed periodic public reports with the SEC; and

- 15 -

(b)     Hasbro regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Hasbro during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Hasbro shares were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Hasbro or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

- 16 -

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Hasbro; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### COUNT I

**Violation of Section 10(b) of the Exchange Act**
**and Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

46.     Plaintiff incorporates ¶¶1-45 by reference as if fully set forth herein.

47.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Hasbro common stock during the Class Period.

49.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Hasbro common stock.  Plaintiff and the Class would not have purchased Hasbro common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

50.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Hasbro common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against All Defendants

51.     Plaintiff incorporates ¶¶1-50 by reference as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Hasbro within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as officers and/or directors of Hasbro, and their ownership of Hasbro stock, the Individual Defendants had the power and authority to cause Hasbro to engage in the wrongful conduct complained of herein. Hasbro controlled each of the Individual Defendants and all of its employees.  By reason of such conduct, the Individual Defendants and Hasbro are liable pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  September 28, 2018

MOTLEY RICE, LLC
VINCENT L. GREENE IV

Vincent L. Greene IV

55 Cedar Street, Suite 100
Providence, RI 02903
Telephone: 401/457-7700
401/457-7708 (fax)
vgreene@motleyrice.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
VICKI M. DIAMOND
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vdiamond@rgrdlaw.com

VANOVERBEKE MICHAUD & TIMMONY P.C
Thomas Michaud
79 Alfred Street
Detroit, MI 48201

*Attorneys for Plaintiff*